<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES CUOZZO<br><br>Plaintiff,<br><br>v.<br><br>DAVIS-STANDARD, LLC; JOHN DOES 1-10 (said names being fictions); and ABC CORPORATIONS 1-10 (said corporations being fictitious),<br><br>Defendants. | Civil Action No.:<br>10-2276 (PGS)<br><br>MEMORANDUM AND ORDER |

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court on defendant, Davis-Standard LLC's, ("Davis-Standard") motion for summary judgment.  On March 18, 2010, Plaintiff Charles Cuozzo ("Plaintiff") filed a complaint against Davis-Standard and Thomas Lewon in the Superior Court of New Jersey alleging discriminatory discharge because of Plaintiff's illness in violation of the New Jersey Law Against Discrimination ("NJ LAD").  On May 5, 2010, Davis-Standard removed the case from state court to this Court pursuant to 28 U.S.C.A. § 1332(a).  For the reasons set forth below, Davis-Standard's Motion for Summary Judgment is granted. [Docket Entry No. 19].

      **I.   Facts**

      Plaintiff began his employment with Davis-Standard in 1988 as a part-time Control Monitor Record ("CMR") technician.  Defendant, Davis-Standard manufactures machinery and parts used to manufacture products, such as flexible packaging, tapes, and labels.  Davis-

1

Standard is headquartered in Connecticut with operations in Somerville, New Jersey, Fulton, New York, and Germany.  Davis-Standard employed Plaintiff in its Somerville plant from 1988 until his termination in April 2009.

Davis Standard initially hired Plaintiff as a part-time Control Monitor Record ("CMR") technician in the Order Fulfillment Department of Davis-Standard's Converting Systems Division.  Plaintiff had the skill set for this job due to three years in the United States Navy as an Electrician's Mate and his completion of an Electronic Technician program at DeVry Institute.  Approximately two months later, plaintiff became a full-time employee under the same title.  In 2000, plaintiff was promoted to Senior CMR technician.

In 2001, Davis-Standard underwent a formal reduction in force ("RIF").  At that time, Davis-Standard offered Plaintiff a voluntary severance package, but plaintiff declined the offer.  In 2002, Davis-Standard ceased manufacturing CMR devices because of declining demand from significant technology changes within the industry.  By 2005, the CMR group consisted of only the Plaintiff and one other individual.  As a result, Davis-Standard limited the Plaintiff to CMR repair work.  Thereafter, Davis-Standard eliminated the CMR group, discharged Plaintiff's co-worker in the unit, and transferred Plaintiff to the Electrical Engineering Group.  While part of the Electrical Engineering Group, Plaintiff continued his repair work on CMR devices and helped where needed since Plaintiff did not have the required skill set for this group.  Thomas Lewon ("Lewon") served as Plaintiff's supervisor in the Electrical Engineering Group.

In early 2009, Plaintiff underwent a lung biopsy due to chest pains he began experiencing in February 2008.  Prior to undergoing his biopsy, Plaintiff asserts that he notified his supervisors, Lewon and John Galvin ("Galvin"), and a Human Resources manager responsible for short term disability applications at the Somerville plant, that he would be absent from work

for a biopsy. Following his biopsy, Plaintiff was diagnosed with a chronic condition called sarcoidosis. Upon returning to work, Plaintiff discussed his diagnosis with Lewon, specifically his need for regular doctor visits every six weeks. Neither party disputes that after Plaintiff's conversation with Lewon, Plaintiff's assignments and Lewon's supervision remained the same as it had always been.

In 2009, Davis-Standard's booked orders dropped to nearly a third of what it had been the previous year. During the first quarter of 2009, Mark Panozzo, President of Plaintiff's division, began discussions with his direct reports about the economic downturn and the need for a RIF. Thereafter, Steven Cole ("Cole"), Vice President of Order Fulfillment, met with Earl Clymer ("Clymer"), Director of Manufacturing, and Lewon and asked them to provide their inputs as to who would be the right employees to keep based on skill set. With the help of a Human Resources representative, Cole, Clymer, and Lewon created a matrix system for rating employees in the Somerville Electrical Engineering Group (supervised by Lewon) and the Somerville Mechanical Engineering Group (supervised by Clymer). The matrix system addressed the requisite skill-set needed in the respective groups.

Lewon and Clymer both rated Plaintiff the lowest on the Electrical Engineering Grid. Plaintiff received a score of sixteen out of a possible score of forty-five from Lewon and a score of nine out of forty-five from Clymer. The scores of the other employees in the group, rated by Lewon, ranged from thirty-one to thirty-six. The scores of the other employees in the group, rated by Clymer, ranged from twenty to thirty-nine. Cole also created a matrix summarizing the employee's rating for what Davis-Standard perceived as the three most important skills of an engineering group member. Plaintiff's rank tied for second to last with a score of five out of a possible score of fifteen. Clymer and Lewon made no specific recommendations as to which

employees should be discharged. Cole ultimately made the decision to terminate Plaintiff based, in part, on Clymer and Lewon's ratings.

Davis-Standard discharged Plaintiff and ten other employees in April 2009, including Plaintiff's supervisor Lewon and another employee who ranked second to last to Plaintiff according to both Clymer and Lewon's matrices. Plaintiff acknowledged that he was still on a "learning curve" and had not yet acquired the requisite skill set, but he had more seniority at the company in comparison to the others terminated. On April 12, 2009, Plaintiff sent an email to Clymer, after Plaintiff was terminated, to express his desire to be notified of future employment opportunities with Davis-Standard. During the course of Plaintiff's employment, Davis-Standard's New Jersey workforce diminished from about four hundred employees in 1988 to less than one hundred and thirty in 2009. By March 2010, Davis-Standard's New Jersey workforce dwindled to one hundred and ten. Davis-Standard did not hire anyone to replace Plaintiff. Plaintiff further acknowledges that at no point during his employment or prior to filing this suit did he raise any discrimination claims against Davis-Standard.

On March 18, 2010, Plaintiff filed a complaint in the Superior Court of New Jersey against Davis-Standard and Lewon alleging discriminatory discharge because of his disability in violation of the NJ LAD. Plaintiff alleges that Davis-Standard terminated him to curb rising employee health costs. On May 5, 2010, Davis-Standard removed the case from state court to this Court on diversity jurisdiction pursuant to 28 U.S.C.A. § 1332(a). On June 21, 2010, Plaintiff voluntarily dismissed his complaint against Lewon without prejudice. On August 25, 2011, Davis-Standard filed this motion for summary judgment.

4

## II.     Summary Judgment Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324.  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).  The non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

However, the party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  *Id.* at 248.  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor, that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x. 222, 227 (3d Cir. 2007).

### III.    Discussion

Plaintiff alleges that Davis-Standard violated the NJ LAD. The statute "prohibit[s] any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J. Stat. Ann. § 10:5-4.1. In applying the NJ LAD, courts use the same burden-shifting framework that the Supreme Court adopted in *McDonnell Douglas*, which requires a three step analysis. *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973). *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007); *Andersen v. Exxon Co., U.S.A.*, 89 N.J. 483, 446 (1982). First, the plaintiff must establish a *prima facie* case for discrimination by demonstrating (1) he was disabled or handicapped or perceived to be disabled within the meaning of the NJ LAD at the time of the alleged discrimination; (2) he was objectively qualified to perform the essential functions of the job, with or without accommodation; (3) he suffered an adverse employment action because of his handicap; and (4) the employer sought to, or did fill the position with a similarly-qualified person. *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 14 (2002); *Marzano v. Computer Sci. Corp. Inc.*, 91 F.3d 497, 503 (3d Cir. 1996).

In this Circuit, courts have held that a plaintiff must demonstrate that the employer had knowledge of the disability in order to establish a causal connection between the adverse employment action and the disability. *See, e.g., Illingworth v. Nestle U.S.A., Inc.*, 926 F.Supp. 482, 484 (D.N.J. 1996) (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578 (3d Cir. 1996); *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928 (7th Cir. 1995)). *Hedberg* was an American with Disabilities Act ("ADA") suit where the defendant terminated the plaintiff without any

knowledge that he was disabled. The court held that an employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability. *Hedberg*, 47 F.3d at 932. "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Id*. In *Geraci v. Moody-Tottrup, Int'l, Inc*, the Third Circuit affirmed a grant of summary judgment in a pregnancy discrimination suit under Title VII where the employer terminated the plaintiff before it became aware of her pregnancy. The court explained that "disabilities are often unknown to the employer, and, because of that, the plaintiff must demonstrate that the defendant employer knew of the disability to state a prima facie case of unlawful discharge." *Geraci*, 82 F.3d at 581. The plaintiff had told six out of twenty coworkers that she was pregnant. *Id*. at 582. The Third Circuit held that whether or not management knew of her pregnancy was sheer speculation because, although she had told six people, she did not tell any of the defendant's management. *Id*.

In the context of a RIF, it is unnecessary for the plaintiff to show that his employer actually replaced him with someone outside the protected class as to the fourth element. *Marzano*, 91 F.3d at 503. Rather, it is sufficient to show that his employer discharged him, while it retained someone outside the protected class. *Id*.

Once the plaintiff establishes the *prima facie* case for discrimination, the second step requires a burden shift to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. On the third step, the burden then shifts back to the plaintiff to establish by a preponderance of the evidence that the employer's articulated reason was a pretext for discrimination. *Id.*; *Sarullo v. U.S. Postal Serv*.,

352 F.3d 789, 797 (3d Cir. 2003).  To defeat summary judgment, the plaintiff must demonstrate "some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

In the instant matter, Plaintiff cannot establish a *prima facie* case for disability discrimination under the NJ LAD.  As to the first element, it is undisputed that Plaintiff has demonstrated that he has a disability within the meaning of NJ LAD under N.J.S.A. 10:5-5q. Plaintiff has sarcoidosis, which is a recognized medical condition that affects his biological functions.  As to the second element, even though Plaintiff lacked many skills his co-workers possessed, he was presumably qualified to perform the essential functions of his job given the length of time Davis-Standard employed Plaintiff in that position. Although Davis-Standard terminated Plaintiff, Plaintiff cannot establish that his termination was because of his disability to satisfy the third element.  In particular, Plaintiff has failed to show that the individual responsible for his termination, Cole, had knowledge of his condition.

Plaintiff testified that he attempted to keep his illness to himself.  Neuhauser Decl., Ex. A at 40:14-17.  Although Plaintiff discussed his diagnosis of sarcoidosis with Lewon, he admits he never discussed his illness with Cole and that to his knowledge Cole knew nothing of his illness. *Id.* at 128:10-15.  Plaintiff did not directly report to Cole. Neuhauser Decl., Ex. F at 8:14-15. Cole testified that he never had any direct contact with Plaintiff.  *Id.* at 8:25.  Cole's knowledge of Plaintiff's illness was limited to one conversation with Lewon, in which Lewon commented, "everything is good" with Plaintiff. *Id.* at 38:15-24.  Moreover, Lewon testified that Plaintiff

never appeared sick in the office and his illness never affected his ability to do his job. Neuhauser Decl., Ex. B at 41:18-42:1. Therefore, the record makes clear that it is sheer speculation that Cole had knowledge of Plaintiff's disability. Similar to *Geraci*, Cole testified that he had no knowledge of Plaintiff's disability and Plaintiff has failed to present any evidence to the contrary. Accordingly, plaintiff is unable to satisfy the third element to demonstrate that his termination was because of his disability. Therefore, Davis-Standard has established as a matter of law that it lacked knowledge of plaintiff's disability at the time of his termination.

Nevertheless, Davis-Standard has articulated a legitimate non-discriminatory reason for terminating Plaintiff. This district has held that a RIF is a legitimate reason for termination that rebuts a plaintiff's *prima facie* case. *Silvestre v. Bell Atlantic Corp.*, 973 F. Supp. 475, 482-83 (D.N.J. 1997), *aff'd,* 156 F.3d 1225 (3d Cir. 1998). Davis-Standard indicated that it was forced to reduce its workforce because it experienced a significant decline in its business over the years due to technological changes and the economic downturn. Additionally, Davis-Standard has maintained that its decision to discharge Plaintiff was based on the employee's skill level and the type of skills Davis-Standard needed to support its current and future business. These are legitimate reasons for termination that would have rebutted Plaintiff's *prima facie* case and placed the burden on Plaintiff to demonstrate that the reason is merely pretextual.

### IV.   Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is granted.

# ORDER

This matter having come before the Court on Defendant's motion for summary judgement [Docket Entry No. 19], and this Court having considered the parties' written submissions and for the reasons stated above;

IT IS on this 13th day of March, 2012,

ORDERED that defendant Davis-Standard, LLP's motion for summary judgment [Docket Entry No. 19] is GRANTED.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.